Filed 7/11/14  In re Destiny S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re DESTINY S., a Person Coming Under the Juvenile Court Law. | H040034<br>(Santa Clara County<br>Super. Ct. No. JD21214) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT S.,<br><br>        Defendant and Appellant. | |

## I. INTRODUCTION

Parents of a child three or older who has been removed from their custody are generally entitled to reasonable reunification services for the first 12 months after the child's removal.  If after 12 months the juvenile court finds that reasonable services have been offered, but there remains no substantial probability of returning the child to parental custody within the next six months, the court ordinarily terminates services and schedules a hearing to select and implement a permanent plan.  When reunification services have been offered to two parents who are not similarly situated, the court may

terminate services to one parent and continue services to the other parent without scheduling a permanency planning hearing.

That is what occurred in this case. After making the required findings at a 12-month review hearing on July 8, 2013, the court ordered that services continue for the mother of then seven-year-old Destiny S. (Minor) and be terminated for the father, Robert S. (Father).

On appeal, Father contends that the juvenile court committed two errors in terminating services to him. First, the court's conclusion that reasonable services had been offered or provided to him was not supported by substantial evidence. Second, the court misunderstood and therefore abused its discretion in terminating services to Father, who has been incarcerated throughout the dependency hearings with an expected release date no sooner than December 26, 2013. We will affirm the order terminating reunification services after concluding that Father has failed to establish either error.

## II. TRIAL COURT PROCEEDINGS

The Santa Clara County Department of Family and Children's Services (Department) filed a petition in May 2012 asking that Minor be adjudicated a dependent of the court. (Welf. & Inst. Code, § 300.)[1] Minor is a special needs child with mild cerebral palsy and is a client of the San Andreas Regional Center. The petition alleged that Minor was at substantial risk of physical harm or illness because her mother N. J. (Mother) has a history of methamphetamine use dating back to 1999 and an extensive criminal history including storing controlled substances in 2000, willful cruelty to a child in 2006, and transporting controlled substances in 2008. The willful cruelty conviction arose from Minor being in the back seat of Mother's car when she rammed Father's car because he was cheating on her. Mother appeared to have resumed using drugs. She left

_____

[1] Unspecified section references are to the Welfare and Institutions Code.

Minor with a roommate and regularly brought her to school up to an hour late without her arm and leg support braces and picked her up about three hours after school ended. Mother was also evading drug tests by social workers.

Minor was taken into protective custody pursuant to a warrant on May 11, 2012, and the court ordered her detained. The court determined that Father is the presumed father.

An amended petition filed in May 2012 added allegations of Father's extensive history of substance abuse and crimes, including domestic violence, possession of a controlled substance for sale, and pending charges for transporting a controlled substance. Father was at that time incarcerated in the Monterey County Jail. The amended petition alleged Minor had resided with Mother in San Jose before intervention. An initial hearing report signed by the social worker paraphrased Mother as saying she was in a relationship with Father, whom she and Minor visited in Salinas until his arrest in January 2012.

Counsel was appointed to represent Father in June 2012. The "jurisdiction/disposition report" filed later that month reported, among other things, Father's extensive history of criminal convictions.[2] Father remained in jail following his

---

[2] Father's convictions included: May 1997, misdemeanor inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)); September 1997, misdemeanors of possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)), passing a fictitious check (Pen. Code, § 476), and disturbing the peace (Pen. Code, § 415); June 1998, misdemeanors of vandalism (Pen. Code, § 594, subd. (b)(4)), battery (Pen. Code, § 242), and making an obscene or threatening phone call (Pen. Code, § 653m, subd. (a)); March 1999, felony possession of a controlled substance for sale (Health & Saf. Code, § 11378); May 2000, felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); August 2003, felony passing a fictitious check (Pen. Code, § 476); and February 2004, felony possession of a controlled substance for sale (Health & Saf. Code, § 11378).

arrest in January 2012 for participating in a criminal street gang (Pen. Code, § 186.22, subd. (a)), transporting a controlled substance (Health & Saf. Code, § 11379), possessing paraphernalia for use with controlled substances (Health & Saf. Code, § 11364), and carrying a concealed weapon in a vehicle (Pen. Code, § 25400, subd. (a)(1)).

On June 21, 2012, Father and Mother were present in court and each agreed in writing to waive their hearing rights and submit the dependency determination based on the social worker's reports. At a hearing on that date, the court found true the allegations in the amended petition and declared Minor a dependent of the court, removing her from Mother's custody. The court ordered Mother and Father, among other things, to submit to random drug testing, to submit an "aftercare relapse prevention plan" to the social worker, and to participate in and complete reunification services including substance abuse counseling , a substance abuse self-help program, and parenting classes. The court adopted a recommended finding: "By clear and convincing evidence, placement with the previously noncustodial parent [Father] would be detrimental to the safety, protection, or physical or emotional well-being of the child, b[ut] the previously noncustodial parent does request services to reunify with the child."

### SIX-MONTH REVIEW HEARING

A six-month review hearing was scheduled for December 13, 2012. Father waived his right to appear personally at that hearing.

A status review report signed December 3, 2012 and filed on January 10, 2013, described Minor's progress in foster care and Mother's minimal participation in her case plan. It recited that the social worker had been unable to contact Father, who was then incarcerated in North Kern State Prison in Delano. Father had not responded to a November 2, 2012 letter enclosing his case plan and listing services and programs offered at that prison. It appeared Father had not participated in any aspect of his case plan due to his incarceration. The report recommended both parents continue to receive family reunification services.

4

On December 13, 2012, Father's counsel asked for a contested hearing regarding the services provided Father, and on December 17, 2012, the social worker again sent Father information about services available at North Kern State Prison and a copy of his case plan, along with a self-addressed stamped envelope.

The court conducted the requested hearing on January 10, 2013, received the social study report, and took the matter under submission. According to the clerk's minutes, Father waived his right to appear personally at that hearing. At a continued hearing on January 14, 2013, the court ordered prior orders to remain in effect and scheduled the case for January 18, 2013. On that date the court found the Department had not provided reasonable services to Father. The court found visiting state prison would be detrimental to Minor so it limited Father's visitation to supervised telephone calls and letters sent through the social worker. The court ordered services continued for both parents.

By letter to the social worker dated January 5, 2013, and received January 18, 2013, Father acknowledged receiving his case plan. He explained he was still in a reception center that did not offer many services, but he anticipated a transfer to a mainline institution where more resources would be available. He had received his G. E. D. on December 13, 2012, while in North Kern Prison. He would update the social worker with his address and available services after he was transferred. In a letter dated January 22, 2013, the social worker acknowledged Father's letter, reiterated the case plan, enclosed a self-addressed stamped envelope, and advised Father that the Department would accept collect calls.

### 12-MONTH REVIEW HEARING

The 12-month review hearing was scheduled for June 10, 2013.

An "Interim Review Report" signed March 18 and filed with the court on March 20, 2013, explained that Father had been transferred on February 14, 2013, to the California Correctional Institution in Tehachapi (CCI) and would remain incarcerated

5

there until December 26, 2013.  On March 4, 2013, the social worker had received a letter from Father saying he had been assigned a correctional counselor who could assist him in locating educational services.  On March 6, 2013, a prison program education coordinator told the social worker that an inmate must initiate his own participation in any available substance abuse and parenting programs.  On March 13, 2013, the social worker sent Father information obtained from the coordinator about the services offered at the prison — "Such services are AA/NA meeting, parent education program, mental health service, GED and other services" — and advised him he must tell his correctional counselor of his interest in obtaining services.  On March 18, 2013, Minor's therapist said it was not a good idea for Minor to visit Father in prison due to her disability and the travel involved. The social worker noted that Father had not asked to arrange any contact with Minor by telephone, writing, or photographs.

The court conducted "Dependency Wellness Court" review hearings on February 21, March 7, April 18, May 9, and May 30, 2013.  At an interim review hearing on March 20, 2013, the court again ordered that previous orders would remain in effect.  At a hearing on March 25, 2013, the court granted a request by the foster parents to be deemed de facto parents.

On April 30, 2013, the social worker wrote to Father to inquire if he had participated in any available services, and again enclosed a self-addressed stamped envelope.  By letter dated May 9 and received May 15, 2013, Father advised the social worker he was "complying in full with any & all services that are available to [him]."  He attended "[NA] meetings every Monday evening."  He received a certificate of completion for attending an "Alternatives to Violence Project seminar."  He had signed up for, but not yet started, a seven-week parenting class.  "I hope this shows you that I am serious about fulfilling my court ordered case plan in order to gain reunification services with [Minor] . . . ."  By letter dated May 15, 2013, the social worker acknowledged receipt of Father's letter, but informed him he would be recommending termination of

6

services because Father's anticipated incarceration exceeded the time for family reunification services. He also stated, "you must provide me with evidence that you're currently enrolled in the programs you mentioned in your letter."

A notice of the 12-month review hearing was filed May 21, 2013. The social worker recommended reunification services be continued for Mother and terminated for Father due to the lack of substantial probability Minor would be returned to his physical custody within 18 months of removal.

A status review report dated May 29, 2013 described Father's May 9 letter, but noted he had provided no "verification that he is enrolled or participating in the abovementioned services." The social worker observed in the report that Father "does not have a relationship with [Minor]. . . ." He "will not be released until the end of this year or early next year." He "will remain incarcerated through the time of the 18-month review in this case, and he has not made [] significant progress in completing his case plan, nor in resolving the issues that brought his daughter into protective custody." Specifically, Father had not provided the social worker with a relapse prevention plan and, due to his incarceration, he had not participated in a parent orientation program, substance abuse counseling, a substance abuse parenting class, or a drug and alcohol treatment program.

An addendum report dated June 7, 2013 described that the CCI "community resource manager" told the social worker she could not provide information over the phone about programs an inmate is enrolled in, so the social worker sent his request in an email. On June 11, 2013, the community resource manager emailed the social worker, "Sorry, I was denied giving you the information." The social worker emailed her for assistance on June 12 and July 1, 2013, advising her that the information would be helpful to a juvenile dependency court decision. On July 1, she responded, "I am still not allow[ed] to give out this kind of information."

7

A second addendum report dated July 3, 2013 described a June 25 conversation with Minor's therapist, who reiterated that Minor should not travel a long distance to see Father in prison due to her special needs. Also, she does not know him. She does not talk about him in therapy. She had spoken with him by telephone a few times while visiting Mother.

At the 12-month review hearing on July 8, 2013, Father was still in custody and his attorney announced Father had waived his appearance. Father's counsel stated that Father objected to termination of services, asserted reasonable services were not provided, and submitted the matter on those comments. The Department argued that Father's nonappearance was typical of the efforts he had made toward reunification. He had not verified any of his claimed case plan progress.

The juvenile court found by clear and convincing evidence that reasonable services had been offered or provided to both parents. The court continued services to Mother, finding a substantial probability Minor would be safely returned to her physical custody within 18 months of removal, and set an 18-month review hearing for November 7, 2013. "There is not a substantial probability that the child will be returned to the physical custody of her Father, Robert [S.], and safely maintained in the home within the 18 months of the child's initial removal. Family reunification services shall be terminated for the Father." The court also found that Father had made no progress "towards alleviating or mitigating the causes necessitating placement . . . ." Father appeals that order.

## III. ANALYSIS

At a 12-month review hearing, the court is required to determine "whether reasonable services that were designed to aid the parent or legal guardian to overcome the problems that led to the initial removal and continued custody of the child have been provided or offered to the parent or legal guardian." (§ 366.21, subd. (f).) The court "shall" order a continuation of services for up to six more months if it finds "that

8

reasonable services have not been provided to the parent . . . ." (§§ 366.21, subd. (g)(1); 361.5, subd. (a)(3).) In this case the court concluded at the six-month review hearing that reasonable services had not been offered Father. However, at the 12-month review hearing, the court concluded that both parents had been offered or provided reasonable services. On appeal, Father disputes the latter finding.

The parties agree that we review for substantial evidence a finding that reasonable services were offered. They also recognize that "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services . . . were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

In arguing that he was not offered reasonable reunification services, Father reviews the history of services offered throughout the dependency proceedings. The essence of Father's position is that "[t]he social worker . . . did too little too late" and "failed to make reasonable efforts to assist [F]ather and aid in the safe return of the [M]inor to the [F]ather's custody."

### A. REASONABLE SERVICES WERE OFFERED TO FATHER

We begin by observing that the statutes do not require offering reunification services for any fixed period of time. For a child age three or older, such as Minor, "there is no absolute right to receive the maximum amount of statutorily fixed services in any and all circumstances." (*In re Derrick S.* (2007) 156 Cal.App.4th 436, 445.) "A parent . . . has no entitlement 'to a prescribed minimum period of services.' " (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 876.) "[T]he juvenile court has the discretion to terminate the reunification services of a parent at *any time after it has ordered them,* depending on the circumstances presented." (*In re Derrick S., supra,* at p. 447.) "[T]he court retains discretion to terminate services to one parent before the applicable statutory period has expired even if it does not set a section 366.26 hearing because the other

9

parent is still receiving services." (*In re Katelynn Y.*, *supra*, at p. 878.) This implies that a finding at a six-month review hearing that reasonable services had not yet been provided does not preclude a finding under different circumstances six months later that reasonable services had since been provided.

The critical circumstances in this case were Father's continuing incarceration and what services were available to him in prison. We emphasize that a parent's incarceration does not justify bypassing reunification services unless the parent has been convicted of a violent felony. (§ 361.5, subd. (b)(12).) Section 361.5, subdivision (e)(1) contemplates offering reasonable reunification services to incarcerated parents unless the court determines, by clear and convincing evidence, that services would be detrimental to the child. The statute directs courts to consider, among other things, "the length of the sentence, the length and nature of the treatment," and "the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations" in determining whether offering reasonable services would be detrimental. (*Ibid.*) The statute authorizes ordering an incarcerated parent to attend various classes, programs, and counseling as part of the reunification plan "if actual access to these services is provided." (*Ibid.*; cf. § 361.5, subd. (a)(2).) In considering whether to extend services up to 18 months, juvenile courts "shall consider the special circumstances of an incarcerated . . . parent or parents, . . . including, but not limited to, barriers to the parent's . . . access to services and ability to maintain contact with his or her child." (§ 361.5, subd. (a)(3).; cf. § 366.21, subd. (f).) The court is required to document in the child's case plan the "particular barriers" and limited access presented by the parent's incarceration. (§ 361.5, subd. (e)(1).)

2009 amendments to the statutory scheme reflect a "policy of encouraging the reunification of families of incarcerated parents by easing the difficulties such parents encounter in attempting to obtain services and maintain contact with their children." (*S. T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1017; Stats. 2008, ch. 482, sec. 1.7

10

[§ 361.5, subd. (a)(2)], sec. 2 [§ 366.21, subds. (e), f)], sec. 3 [§ 366.22, subd. (a)], 3 West's Sess. Laws 2008 pp. 2791, 2794, 2803–2804, 2807.)  Part of the legislative accommodation was to allow incarcerated parents extra time for services in special cases, presumably not only the limited institutional services but also services available after their release from custody.

Case law has recognized that incarceration limits the reunification services that social workers can offer.  The programming available to state prisoners is typically what is provided by the prison.  All a social worker can reasonably do is to learn what programs are available where an incarcerated parent is housed, advise the parent of the available programming relevant to the case plan, and encourage the parent to take advantage of it promptly.  (Compare *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1363 ["the department did make reasonable efforts to ensure [incarcerated] mother's meaningful participation in the reunification plan."]; *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1111 [social worker could do no more for mother in Florida prison than contact her by letter and telephone and explain "the types of programs she could search for in prison"]; with *In re Monica C.* (1994) 31 Cal.App.4th 296, 307–308 [it was the department's duty to identify services available to an incarcerated mother, and it was unreasonable to delegate this responsibility to the prisoner]; *In re Mark N.* (1998) 60 Cal.App.4th 996, 1013 ["the department should, at a minimum, have contacted the relevant institutions to determine whether there was any way to make services available to the father."]; *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1477–1478 [the department failed to schedule any visitation between Minor and incarcerated mother as required by reunification plan].

Father faults the social worker for failing in 2013 to (1) acknowledge Father's GED,  (2) contact Father's correctional counselor in March instead of a prison program education coordinator about the services available,  (3) advise Father of the need for verification of his programming earlier than the social worker's letter of May 15,  and

11

(4) seek confirmation of Father's programming from prison staff or the service providers before June 7, given that the 12-month review hearing was scheduled for June 10.

Father relies on *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340 to establish the social worker's duty to contact the service providers directly. That opinion stated, "While it was mother's responsibility to attend the programs and address her problems, it was the social worker's job to maintain adequate contact with the service providers and accurately to inform the juvenile court and mother of the sufficiency of the enrolled programs to meet the case plan's requirements." (*Id.* at p. 1347.) In that case, "[t]he social worker incorrectly informed mother that she had enrolled in all the court-ordered programs and then, at the 12-month mark, told her that she actually was not enrolled in all of the required programs. The social worker then used this lack of enrollment as a basis to recommend that services be terminated." (*Ibid.*) The mother in that case was not incarcerated. From all that appears in our record, CCI, not a third party, was providing the programs available to Father, and the social worker was in contact with two individuals when each held the position of CCI's resources manager.

Father also faults the social worker for asking Father to provide verification of his programming and progress instead of seeking verification from other sources. But it was not a lack of verification that led the juvenile court to conclude that Father had made no progress in alleviating or mitigating the causes that necessitated removal. Even assuming Father's participation or enrollment in all reunification services available, Father had not provided the social worker with a relapse prevention plan and, due to his incarceration, he had not completed a parent orientation program, substance abuse counseling, a parenting class, or a drug and alcohol treatment program. There was no prospect of returning Minor to Father's custody within the following six months, as Father was not due for release before December 26, 2013.

Section 361.5, subdivision (e)(1), provides that courts should consider "the length of the sentence" and "the likelihood of the parent's discharge from incarceration . . .

12

within the reunification time limitations" in determining whether it would be detrimental to the child to offer any reunification services to an incarcerated parent. We believe these circumstances may also be relevant after a court has ordered services to an incarcerated parent in order to evaluate the reasonableness of the services actually offered. In our view, it was reasonable for the juvenile court at the dispositional hearing on June 21, 2012 to order reunification services for Father, who was then incarcerated in jail with an unknown release date. It was also reasonable for the juvenile court at the six-month review hearing on January 18, 2013, to conclude that reasonable services had not yet been provided to Father. It was also reasonable for the juvenile court at the 12-month review hearing on July 8, 2013, to conclude that Father had by then been offered or provided reasonable reunification services. By the time of the 12-month hearing in July, the court had learned that Father would be incarcerated at CCI until at least December 26, 2013. Meanwhile, the social worker had provided Father with his case plan, self-addressed, stamped envelopes, a phone number that accepted collect calls, and information about the programs offered at CCI and how to enroll in them. All these circumstances provide substantial evidence supporting the juvenile court's conclusion that reasonable reunification services had been offered to Father.

### B. TERMINATION WAS NOT AN ABUSE OF DISCRETION

Even if a juvenile court concludes at a 12-month review hearing that reasonable reunification services have been offered, the court "shall continue the case" for up to six more months and order additional services *if* it finds "that there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . and safely maintained in the home within the extended time period . . . ." (§§ 366.21, subd. (g)(1); cf. 361.5, subd. (a)(3).) The court must specify the factual basis for a finding of a substantial probability of return (§ 361.5, subd. (a)(3)) addressing three

13

statutory components of such a finding.[3] In terminating further services for Father here, the juvenile court concluded that there was not a substantial probability that Minor would be safely returned to his physical custody by November 11, 2013 (18 months from Minor's removal on May 11, 2012).

We review decisions to terminate reunification services or to offer additional services for an abuse of discretion. (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 565 [termination of services to one parent and additional services to other parent].)

Father does not appear to dispute the court's conclusion that there was no probability that Minor would be safely maintained in his home within 18 months of her removal from Mother's custody. Instead, Father contends that the trial court overlooked special statutes enacted in 2008 favoring time extensions for incarcerated parents.

Although *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 stated that the "absolute maximum period for services" was 18 months, case law had authorized extending services beyond the 18-month statutory maximum. This court has recognized an exception when "18 months had elapsed and no reunification plan had been developed for the parent . . . ." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1778; cf. *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1215-1216; *In re Mark N.*, *supra*, 60 Cal.App.4th 996, 1016.)

---

[3] Father acknowledges that to find a substantial probability of return within 18 months at a 12-month review hearing, "the court shall be required to find all of the following: [¶] (A) That the parent or legal guardian has consistently and regularly contacted and visited with the child. [¶] (B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1).)

14

The enactment of section 366.25 (Stats. 2008, ch. 482, § 4, 3 West's Sess. Laws 2008 pp. 2809–2811) and amendments of related statutes effective in 2009 contemplate the extension of services at an 18-month review hearing for up to 24 months to accommodate some incarcerated parents. (§ 361.5, subd. (a)(4).) Such an extension depends on several findings, including "clear and convincing evidence that the best interests of the child would be met by the provision of additional reunification services to . . . a parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security and making significant and consistent progress in establishing a safe home for the child's return . . . ." (§ 366.22, subd. (b).)

Father contends that the juvenile court made its order "without any recognition of the possibility that services could have been continued to 24 months at the 18-month review hearing . . . ." "[I]nstead of acknowledging the possibility that services could be extended to 24 months at the 18-month review, the Department made no mention of the foregoing statutes and focused on the fact that [F]ather would not be released until the month following the [18]-month review hearing."

While Father has acknowledged the three components of a substantial probability finding applicable at a 12-month review hearing (*ante*, fn. 3), he ignores the different wording of the substantial probability finding at an 18-month review hearing as provided by section 366.22, subdivision (b), even though he generally cites the statute.[4] He also

_____

[4] To find a substantial probability of safe return at an 18-month hearing to justify up to six months of additional services, the court must find:

"(1) That the parent or legal guardian has consistently and regularly contacted and visited with the child.

"(2) That the parent or legal guardian has made significant and consistent progress in the prior 18 months in resolving problems that led to the child's removal from the home.

*(Continued)*

15

does not acknowledge the additional finding before extending services at an 18-month hearing that additional reunification services will be in the child's best interests.

Reviewing the differences in the statutes reveals a higher statutory threshold for continuing services at an 18-month review hearing than at a 12-month review hearing, though both require the parent to maintain regular contact with the child and to show significant progress in resolving the problems that led to the child's removal.

Father contends that he "moved forward diligently" in "seeking and participating in available services within a reasonable time after being transferred to" CCI and has made "a sincere effort" to obtain services in prison. Successfully obtaining and participating in reunification services is part of what is required of a parent to justify a finding of a substantial probability of safe return, but the parent must also attempt to maintain regular contact with the child, as the Department points out. We do not understand Father to contend that he did so. At the 12-month review hearing, Father did not claim that he met the lower threshold of a substantial probability that Minor would be returned to him within 18 months of removal. There was no occasion for the juvenile court to consider at the 12-month review hearing whether Father met the higher threshold applicable to incarcerated parents at an 18-month review hearing.

Since no party at the 12-month review hearing asserted the existence of such exceptional facts as would justify extending services at an 18-month review hearing, the juvenile court cannot be faulted for failing to discuss at the 12-month review what

---

"(3) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her *substance abuse* treatment plan *as evidenced by reports from a substance abuse provider as applicable, or complete a treatment plan postdischarge from incarceration, institutionalization, or detention, or following deportation to his or her country of origin and his or her return to the United States,* and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.22, subd. (b), italics added.)

16

discretion it might have at a later hearing. The social worker's failure to mention considerations which would apply to continuing services at an 18-month hearing does not rebut the presumption that the trial court understood and followed the law at the 12-month hearing. (*People v. Lang* (1989) 49 Cal.3d 991, 1044.) Father has not established that the juvenile court misunderstood or abused its discretion to continue or deny further reunification services for him, even in light of section 366.25.

## IV. DISPOSITION

The order terminating reunification services for Father is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Mihara, J.